IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL HERRING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HOMELAND SECURITY, THOMAS J. | ) | |
| RIDGE, Secretary, United States | ) | Case No. 04 C 8088 |
| Department of Homeland Security, | ) | |
| UNITED STATES DEPARTMENT OF | ) | Judge Joan H. Lefkow |
| TRANSPORTATION, NORMAN Y. | ) | |
| MINETA, Secretary, United States | ) | |
| Department of Transportation, the | ) | |
| TRANSPORTATION SECURITY | ) | |
| ADMINISTRATION, and DAVID M. | ) | |
| STONE, Acting Administrator for | ) | |
| the Transportation Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff, Michael Herring ("Herring"), filed suit against defendants, the United States Department of Homeland Security ("DHS"), Thomas J. Ridge, Secretary of DHS, the United States Department of Transportation ("DOT"), Norman J. Mineta, Secretary of DOT, the Transportation Security Administration ("TSA" or "agency") and David M. Stone, Secretary of TSA (collectively, "defendants") alleging race discrimination in violation of 42 U.S.C. § 1981 (Count I), a hostile work environment based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Count II), disparate treatment based on race in violation of Title VII (Count III), disparate treatment based on disability in violation of the

1

Americans with Disabilities Act, 42 U.S.C. § 42101 *et seq.* (Count IV), and retaliation based on protected activities in violation of Title VII (Count V).[1] This court granted defendants' motion for summary judgment on Counts I, III, IV, and V, but denied the motion on Count II, finding a genuine issue of material fact as to whether DHS subjected Herring to a hostile work environment because of his race. *See* Docket No. 66. On January 13, 2009, the court granted DHS leave to file a renewed motion for summary judgment on Count II, which is the motion currently before the court. For the following reasons, defendants' motion for summary judgment [#78] on Count II is granted.

## RELEVANT FACTS[2]

On December 19, 2002, TSA offered Herring a conditional appointment as a transportation security screener. Two days later Herring accepted the appointment, agreeing, among other things, to a one-year probationary period, and acknowledging that he could be disciplined for using abusive language against TSA staff. Herring completed his TSA baggage screening basic training on December 30, 2002. Shortly thereafter, on January 21, 2003, Herring injured himself while lifting baggage. Herring was absent from work on paid disability leave from March 13, 2003 through April 16, 2003. His doctor released him to return to work on April 17, 2003, but Herring took sick leave on April 18 and 19. After returning from disability leave, Herring's attendance deteriorated rapidly. He accumulated eleven unauthorized absences during the month of May and never returned to work after May 29, 2003.

On May 22, 2003, Herring heard co-worker Nataliha Metzler mumble "nigger" as she walked by his work station. Def.'s L.R. 56.1 SoF ¶ 18. The next day, Metzler bumped into

---

1 The court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-2 *et seq.*
2 As discussed *infra* at 45, because plaintiff failed to file a response to defendants' statement of facts submitted in support of this motion, the facts contained in this section are derived solely from defendants' statement.

Herring and failed to apologize. Instead, she called Herring "bitch ass" in front of two TSA employees. *Id.* ¶ 19. Finally, on May 29, 2003, Metzler told Herring that if she lost her job, she would get back at him. *Id.* ¶ 20. On June 2, 2003, Herring complained to TSA officials about the May 22, 23, and 29 events with Metzler. Two days later, human resources official Sharon Campbell issued Metzler a warning letter, reprimanding her for the May 22, 23, and 29 incidents and warning her that "any future incidents of this nature may result in disciplinary action being taken, up to and including removal, from the federal service." *Id.* ¶ 21.

After investigating Herring's harassment claims, human resources officials informed Herring that they had disciplined the employees involved. Herring rudely refused TSA's requests to return to work, calling Campbell a "bitch." *Id.* ¶ 25. TSA offered to place Herring on a new shift away from problem employees, but Herring persisted in his refusal to return to work, claiming he was "on strike." *Id.* In September 2003, TSA gave Herring one last chance to return to work, reiterating that all the employees he accused of harassment had been disciplined. *Id.* ¶ 26. Herring again refused to return to work, stating that his school schedule conflicted with his work schedule at TSA. *Id.* ¶ 27.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the court must assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. *Id*. While the court must construe all facts in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), where a claim or defense is factually unsupported, it

should be disposed of on summary judgment. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323-24 (1986). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Id*. at 323. In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id*. at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000).

Summary judgment rules "assist the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Markham* v. *White*, 172 F.3d 486, 490 (7th Cir. 1999). The rules also "assist the parties by imposing some discipline on the pretrial process and facilitating an early end to cases that do not require a full trial." *Id.* Although summary judgment rules impose a limited burden on lawyers, the judicial system as whole is better served if pre-trial organization occurs sooner in the litigation process rather than later. *Id.*

Northern District of Illinois Local Rule 56.1(a) requires the party seeking summary judgment to submit, among other things, a statement of material facts, which consists of short, numbered paragraphs and specific references within each paragraph to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. L.R. 56.1(a)(3). The nonmoving party must then submit a concise response to the movant's statement of facts. *Id*. Material facts improperly denied by the nonmoving party are deemed admitted by the court. *Id.*

## ANALYSIS

As a threshold matter, Herring failed to comply with Local Rule 56.1(b)(3) by neglecting to submit a response to the DHS's statement of facts, as required by Local Rule 56.1(b)(3)(A)-

(C). Instead, Herring re-submitted, without revision, his response to DHS's statement of facts in support of its previous motion for summary judgment (Docket No. 45), which contained information relating not only to the claim at hand but also to the four other claims previously dismissed by the court. In regard to that response, the court previously noted:

> Unfortunately, Herring's response to DHS's statement of facts is not the concise response mandated by Local Rule 56.1(b)(3). Herring does not simply respond to the facts set out by DHS by admitting them or denying them with specific citations to the record. *See* N.D. Ill. L.R. 56.1(b)(3)(B). Instead, many of his responses take the form of admissions qualified by long narratives regarding other facts that Herring contends are material. The most egregious example of this failure is his response to DHS's paragraph number 21, which is over seven pages long and includes numerous alleged facts and citations to the record. Because of this failure, this court has the discretion to ignore all of Herring's proposed facts that were submitted only in response to DHS's statement of facts. *Cichon* v. *Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005). Indeed, Herring's responses to defendants' statements of fact are lengthy, unwieldy, and include many inferences and legal conclusions. The court will therefore not examine each one to determine whether it is an undisputed material fact. It will, however, consider Herring's allegations insofar as they are relevant to the analysis of his hostile work environment claim.

Op. & Order Partially Granting Defs.'Mot. Summ. J., September 8, 2008, at 3 n.2 (Docket No. 66).

The court is entitled to expect strict compliance with Local Rule 56.1 procedures. *Ammons* v. *Aramark Uniform Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *see also Hill* v. *Thalacker*, 210 Fed. Appx. 513, 515 (7th Cir. 2006) (ruling that the district court acted within its discretion when it deemed the defendant's statement of facts admitted because the *pro se* plaintiff failed to follow the court's summary judgment procedures); *Smith* v. *Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (ruling that the district court acted within its discretion when it deemed defendant's statement of facts admitted because the plaintiff failed to support controverted or

additional facts with citations to admitted evidence); *Markham*, 172 F.3d at 490 (ruling that the district court acted within its discretion when it disregarded depositions and other discovery materials that appeared only in the defendant's supporting brief); *Waldridge* v. *Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994) (ruling that district court acted within its discretion in granting summary judgment to defendant based on plaintiff's failure to comply with Local Rule 56.1). Because Herring failed to respond to defendants' new statement of facts, offering only his defective previous filing, the court deems all of defendants' facts admitted.

Title VII prohibits an employer from discriminating against any individual with respect to his compensation, terms, conditions or privileges of employment because of the individual's race. 42 U.S.C. § 2000e-2. An employer may be liable for Title VII discrimination if an employee is subject to a hostile work environment because of his race. *Mason* v. *S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000). To recover for a hostile work environment, an employee must demonstrate that (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe and pervasive so as to alter the conditions of the employee's environment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Id.* (citing *Parkins* v. *Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998)).

A hostile work environment exists when an employee is subject to conduct so severe and pervasive that a reasonable person would find the work environment abusive or hostile. *Salvadori* v. *Franklin Sch. Dist.*, 293 F.3d 989, 997 (7th Cir. 2002) (citing *Oncale* v. *Sundower Offshore Serv., Inc.*, 523 U.S. 75, 81, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). To determine whether the harassment was severe or pervasive, the court considers "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ngeunjuntr* v. *Metro. Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998) (quoting *Harris* v. *Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).

Herring cannot establish a prima facie case of racial harassment because he failed to show that the harassment he experienced was severe and pervasive. Herring points to one isolated incident where he heard co-worker Natalia Metzler mumble "nigger" as she passed his workstation. "The mere utterance of a racial epithet," however, "does not sufficiently affect the conditions of employment to create a hostile work environment." *Salvadori*, 293 F.3d at 997 (citation omitted) (ruling that two isolated offensive comments targeted at the plaintiff over the course of two years did not create a hostile work environment). Metzler's conduct, although offensive, was not physically threatening, nor did it unreasonably interfere with Herring's work performance. Thus, Herring fails to demonstrate that TSA was "permeated with discrimination, intimidation, ridicule and insult" so severe and pervasive as to change the terms and conditions of his employment. *Harris*, 510 U.S. at 21 (internal quotation marks omitted).

Even if Herring had shown that he experienced severe and pervasive discrimination, his claim against DHS would still fail because he has not demonstrated that DHS acted negligently in discovering or remedying the harassment. Within two days of learning of Metzler's comment, TSA issued Metzler a warning letter, reprimanding her for her behavior towards Herring and notifying her that any future incidents could result in her removal from federal service. TSA also gave Herring several chances to return to work, and offered to place him on a new shift away from problem co-workers, but Herring repeatedly rebuffed TSA's efforts.

An employer is strictly liable for the actions of its supervisors, but only liable for the actions of non-supervisory employees if it acted negligently in either discovering or remedying

the harassment. *See Parkins*, 163 F.3d at 1032 (citations omitted). Thus, employers who promptly investigate and respond to workplace harassment are not liable for the actions of their employees. *See Porter* v. *Erie Foods Int'l*, 576 F.3d 629 (7th Cir. 2009) (finding no employer liability when the employer promptly removed a noose found hanging in the workplace, interviewed witnesses to the incident and met with all third-shift employees that same day, reviewed the company's anti-harassment policy with workers, met privately with the victim and half of the third-shift workers, and met privately with the suspected perpetrators); *Tutman* v. *WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048-49 (7th Cir. 2000) (finding no employer liability when the employer began investigating the harassment the day of the incident, interviewed the parties involved the next day, and issued a letter reprimanding the party at fault within two weeks).

TSA can avoid liability on Herring's race discrimination claim because it took "'prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring.'" *Cerros* v. *Steel Techs., Inc.*, 398 F.3d 944, 953-54 (7th Cir. 2005) (quoting *Williams* v. *Waste Mgmt. of Illinois*, 361 F.3d 1021, 1029 (7th Cir. 2004)). Not only did TSA swiftly investigate Herring's harassment claims and issue a warning letter to Metzler within two days of learning of her conduct, the agency also repeatedly notified Herring that all problem employees had been disciplined and encouraged Herring to return to work. TSA's timely investigation of the only alleged incident of racial harassment, coupled with its willingness to relocate Herring, demonstrates that it was not negligent in responding to or remedying racial harassment in the workplace.

## **CONCLUSION AND ORDER**

For the foregoing reasons, the defendants' motion for summary judgment on Count II [#78] is granted. The clerk is instructed to enter summary judgment in favor of the defendant. This case is terminated.

Dated: September 24, 2009        Enter:

                                                    JOAN HUMPHREY LEFKOW
                                                    United States District Judge